UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| PIETRO PARISI,<br><br>    Plaintiff,<br><br>v.<br><br>LONNIE WIGGINS, et al.,<br><br>    Defendants. | Civil Action No. 23-372 (MCA) (CLW)<br><br>OPINION |

**ARLEO, UNITED STATES DISTRICT JUDGE**

This matter has been opened to the Court by Defendants SCO Lonnie Wiggins and SCO Earl Walker's ("Officer Defendants") motion to dismiss Plaintiff's Complaint (ECF No. 22) and Defendants Gillian Klos, Ronald Gonzalez, Meghan Madru, and Dr. Doreen Stanzione's ("Department of Health "DOH" Defendants") motion to dismiss Plaintiff's Complaint. (ECF No. 26.) For the reasons explained in this Opinion, the motions to dismiss are granted in part and denied in part.

I.   **FACTUAL BACKGROUND**

Plaintiff is a sexually violent predator ("SVP") who is involuntarily committed at the Special Treatment Unit ("STU") in Avenel, New Jersey, pursuant to the Sexually Violent Predator Act ("SVPA"). (ECF No. 1, Complaint at 9.) Plaintiff alleges that SCO Wiggins assaulted him and that SCO Walker and the DOH Defendants knew about the planned assault and failed to prevent it.[1] (*See* Generally Complaint.) Plaintiff also alleges in his Complaint that

---

[1] Plaintiff names additional John and Jane Doe Defendants but does not provide any facts about these Defendants. (*Id.* at 14.)

both the Department of Corrections ("DOC") and the DOH are responsible for inmate safety. (*See* Complaint at 6.)

Plaintiff alleges that on or about May 19, 2021, SCO Walker heard SCO Wiggins threaten Plaintiff with assault.  SCO Wiggins allegedly told Plaintiff: "I hope it's worth getting your face broke [sic]" in response to Plaintiff's refusal to name or implicate himself or other residents in the possession and distribution of contraband at the STU.  (Complaint at 22; *see also* Complaint at 10.)  Plaintiff alleges that Walker did not report Wiggins' threat against Plaintiff or take steps to stop Wiggins from assaulting Plaintiff despite his firsthand knowledge of the threat.  (*Id.* at 22.)

Plaintiff further alleges that he "specifically informed [DOH Defendants] Stanzione, Madru, Klos, Gonzalez, and diverse other DOH-DHS officials of the abuse planned and announced by Wiggins and asked to be protected from it."  (*Id.* at 21.)  Defendant Stanzione is the Clinical Director of the STU and Madru, Klos, and Gonzalez are social workers or treatment providers.  (*Id.* at 10-13.)

Plaintiff alleges that he told Clinical Director Stanzione during Community Rounds that he had been threatened by SCO Wiggins and that other residents had also made him aware of the threats.  (*Id.* at 13.)  Plaintiff asked to be moved off the Unit where SCO Wiggins was assigned, which was a request within the discretion of Stanzione, but his request was denied.  (*Id.*)

Plaintiff further alleges that during Modified Activity Program ("MAP") rounds he repeatedly told Program Coordinator Ms. Madru that he had been threatened by SCO Wiggins and that other residents had told Plaintiff about the threats.  (*Id.* at 12.)  Plaintiff also repeatedly asked to be moved off the Unit where Wiggins was assigned, but this request was denied.  (*Id.*)  Similarly, Plaintiff contends that he repeatedly told Ms. Klos during MAP rounds that SCO

Wiggins had threatened him, and that other residents told Plaintiff about the threats. (*Id.* at 10-11.) Plaintiff asked to be moved off the Unit where SCO Wiggins was assigned, but his request was denied. Plaintiff also alleges that on May 19, 2021, STU resident Charles Whitted informed Mr. Gonzalez that Officer Wiggins had repeatedly stated that he would be "Going After Peter Parisi" the next day. (*Id.* at 11.) According to Plaintiff, Gonzalez did nothing to investigate these claims, "which were plausible due to repeated instances and reports of SCO Wiggins threatening and assaulting other residents." (*Id.* at 11; *see also id.* at 16.) Plaintiff also repeatedly told Gonzalez during MAP rounds that he had been threatened by SCO Wiggins and other residents also made Gonzalez aware of the threats. (*Id.* at 11.) Parisi repeatedly asked to be moved off the Unit, but this request was denied. (*Id.* at 11-12.)

Subsequently, on May 21, 2021, Plaintiff was standing near other residents in the day room when another resident placed a cell phone on Plaintiff's ice chest/cooler. (Complaint at 15.) Plaintiff grabbed the cell phone and tried to get another resident to put the phone in the trash. At that point, SCO Wiggins grabbed Plaintiff and put Plaintiff against the wall. Wiggins then grabbed Plaintiff's right arm and jerked it downward. SCO Wiggins punched Plaintiff in the side of the head, threw him to the ground, and rammed his knee into Plaintiff's side, fracturing Plaintiff's rib.[2] Plaintiff alleges that throughout the incident, Plaintiff complied with Officer Wiggins instructions. (*Id.*) Plaintiff also contends, albeit vaguely, that Wiggins

---

[2] Plaintiff was evaluated by DOC medical staff and complained of severe rib pain. Unidentified medical staff told Plaintiff his rib could not be broken because there was no bruising, but after a few days of "excruciating pain," an x-ray showed that Plaintiff had a broken rib. (*Id.* at 16.) Plaintiff has not identified any of the DOC medical staff who treated him or named these individuals as defendants.

assaulted him because he would not "provide testimony" incriminating himself. (*See* Complaint at 4-5.)

When Plaintiff returned to the South Unit, SCO Walker "deliberately isolated the Plaintiff and kept other residents aways from Plaintiff's door and prevented them from speaking to Plaintiff." (*Id.* at 22.) This allegedly caused depression and anxiety and Plaintiff's placement on suicide watch, which allegedly impacted his ability to be released from the STU. (*See id.* at 22-23.)

Plaintiff asks for compensatory and punitive damages, declaratory relief, and injunctive relief "barring SCO Wiggins from further contact or supervisory control over Plaintiff and any other STU residents." (Id. at 23.) He also asks the Court to "appoint an independent evaluator to establish standards for conditions of confinement" consistent with constitutional law governing SVPs. (*Id.* at 24.) Plaintiff further requests that the Court award injunctive relief requiring DOC staff training and evaluations and to retain an expert to visit and evaluate the facility on a quarterly basis. (*Id.* at 24-25.)

## II.   STANDARD OF REVIEW

The Officer and DOH Defendants move to dismiss Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction and assert they are entitled to sovereign immunity under the Eleventh Amendment. This motion "may properly be considered a motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1)" because "the Eleventh Amendment is a jurisdictional bar which deprives federal courts of subject matter jurisdiction." *Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 693 n.2 (3d Cir. 1996).

In resolving a motion to dismiss for failure to state a claim, under Fed. R. Civ. P. 12(b)(6), "'courts accept all factual allegations as true, construe the complaint in the light most

favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'" *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)); *see also Zimmerman v. Corbett*, 873 F.3d 414, 417–18 (3d Cir. 2017), *cert. denied* 138 S. Ct. 2623 (2018); *Revell v. Port Auth. of N.Y. & N.J.*, 598 F.3d 128, 134 (3d Cir. 2010).

As a pro se litigant, Plaintiff is entitled to liberal construction of his complaint. *See Liggon–Redding v. Estate of Sugarman*, 659 F.3d 258, 265 (3d Cir. 2011). To survive dismissal under Rule 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009) (internal quotation marks and citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*

### III. DISCUSSION

#### a. The Personhood Requirement & Eleventh Amendment Immunity

The DOH and Officer Defendants move to dismiss the official capacity claims against them because they are not "persons" under 42 U.S.C. § 1983 and because they are entitled to Eleventh Amendment immunity.

Section 1983 provides, in relevant part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ...[.]

42 U.S.C. § 1983. In *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989), the United States Supreme Court held that "[n]either a state nor its officials acting in their official capacities are 'persons' under § 1983." The Supreme Court further noted, however, that "a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State.'" *Id.* at 71 n. 10 (quoting *Kentucky v. Graham*, 473 U.S. 159, 167 n. 14; *Ex parte Young*, 209 U.S. 123, 159–60 (1908)).

Here, the Officer and DOH Defendants are entitled to dismissal of "the 42 U.S.C. § 1983 claims insofar as [Parisi seeks] damages against Defendants in their official capacities." *See Durham v. Kelley*, 82 F.4th 217, 224 (3d Cir. 2023). Therefore, the Court grants the motion to dismiss the § 1983 claims for damages against the Officer and DOH Defendants in their official capacities.[3]

The Officer and DOH Defendants also seek dismissal of Plaintiff's state law tort claims under the Eleventh Amendment. The Eleventh Amendment provides sovereign immunity to agencies, departments, and officials of the state when the state is the real party in interest in the suit. *Alabama v. Pugh*, 438 U.S. 781, 781 (1978); *Pa. Fed'n of Sportsmen's Clubs, Inc. v. Hess*, 297 F.3d 310, 323 (3d Cir. 2002); *Chisolm v. McManimon*, 275 F.3d 315, 323 (3d Cir. 2001). The state is a real party in interest when "the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration, or if the effect of the judgment would be to restrain the Government from acting or to compel it to act." *Fitchik v. N.J. Transit Rail Operations, Inc.*, 873 F.2d 655, 659 (3d. Cir. 1989). "In short, sovereign immunity is appropriate if the named defendant is an arm of the state." *Love v. N.J. State Police*, Civ. A. No.

---

[3] The Court addresses the claims for injunctive relief below.

14-1313, 2016 WL 3046257, at *7 (D.N.J. May 26, 2016) (internal citation and quotation marks omitted); *see also Chisolm*, 275 F. 3d at 323. State officials sued in their official capacities are also immune from suit, "because it is merely another way of pleading an action against the state." *Shahin v. Delaware*, 563 F. App'x 196, 198 (3d Cir. 2014); *see also Will*, 491 U.S. at 70–71.

On the other hand, the Eleventh Amendment does not bar suits for damages against government officials sued in their personal capacities. *See, e.g.*, *Garden State Elec. Inspection Servs., Inc. v. Levin,* 144 F. App'x. 247, 251 (3d Cir. 2005). "In personal capacity suits, a plaintiff seeks to impose personal liability upon an individual officer and recover from the personal assets of that officer." *Id.* Therefore, the Eleventh Amendment is not implicated because the State is not the real party in interest. *Kentucky v. Graham,* 473 U.S. 159, 165 (1985); *Lassoff v. New Jersey*, 414 F. Supp.2d 483, 489 (D.N.J. 2006). State employees can be sued in their individual or personal capacities under the NJTCA. *See e.g., Lassoff v. New Jersey*, 414 F. Supp. 2d 483, 490 (D.N.J. 2006) ("Suits against a public officer in his individual capacity are subject to the notice provisions of the [NJ]TCA....").

Here, the Officer and DOH Defendants are entitled to dismissal of the official capacity NJTCA claims for damages on the basis of Eleventh Amendment immunity, and the Court dismisses the NJTCA claims for damages against the Officer and DOH Defendants in their official capacities *only*. The Officer Defendants appear to argue that the personal capacity claims should be dismissed as well, but they do not sufficiently explain why Plaintiff is barred from suing them in their personal capacities. Because they have not met their burden to explain why they are entitled to judgment as a matter of law on the NJTCA claim in their personal capacities, the Court denies the motion to dismiss the individual capacity state law tort claims.

b. **The Failure to Protect Claims against Walker, Stanzione, Madru, Klos, & Gonzalez Brought Pursuant to 42 U.S.C. § 1983**

The Officer and DOH Defendants move to dismiss Plaintiff's failure to protect claims, which are also brought pursuant to § 1983. Both sets of Defendants argue that Plaintiff fails to state a failure to protect claim and that they are entitled to dismissal under Fed. R. Civ. P. 12(b)(6).[4]

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988) (citations omitted). The Fourteenth Amendment mandates that civilly committed individuals may not be subjected to conditions that amount to punishment. *See Bell v. Wolfish*, 441 U.S. 520, 535 (1979); *Southerland v. Cnty. of Hudson*, 523 F. App'x 919, 921 (3d Cir. 2013). In *Youngberg v. Romeo*, 457 U.S. 307 (1982), which involved an involuntarily committed intellectually disabled plaintiff, the Supreme Court reasoned that "[p]ersons who have been involuntarily committed are entitled to more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish." *Id.* at 321–22. The Supreme Court declared that involuntarily committed persons enjoy "constitutionally protected interests in conditions of reasonable care and safety," giving rise to an unquestioned state "duty to provide reasonable safety for all residents and personnel within the institution." *Id.* at 324. *see id.* at 324-25 (holding that the Fourteenth Amendment, rather than

---

[4] The Officer Defendants do not move to dismiss the Fourteenth Amendment excessive force claims against SCO Wiggins, which Plaintiff brings pursuant to 42 U.S.C. § 1983, and the Court does not address that claim or any other claims not identified by Defendants in their motions to dismiss.

the Eighth Amendment, applied to an involuntarily committed mentally disabled person's claim of safe conditions of confinement).

In *Shaw by Strain v. Strackhouse*, 920 F.2d 1135, 1139 (3d Cir. 1990), the Third Circuit also held that *Youngberg's* "professional judgment" standard governed failure-to-protect claim raised on behalf of an individual involuntarily institutionalized because of a mental disability. *See id.* at 1146 ("we must read *Youngberg* at face value and apply the professional judgment standard to all failure to protect, excessive restraint, and failure to habilitate claims brought by mentally retarded persons who are institutionalized"). The Third Circuit noted, however, that the *Youngberg* Court applied the professional judgment standard only to "professional decisionmakers" and "[n]onprofessional employees who provide care for involuntarily institutionalized mentally retarded individuals are subject even after *Youngberg*, only to a deliberate indifference standard." *Shaw*, 920 F.2d at 1147 (citing *Youngberg*, 457 U.S. at 323 n. 30).

The Third Circuit has not yet determined in a published decision whether the professional judgment standard governs failure to protect claims brought by involuntarily committed SVPs. In a failure to protect case involving an SVP, the Third Circuit noted that the plaintiff "as a person who has been involuntarily detained, arguably could show something less than deliberate indifference on the part of the Defendants, as '[p]ersons who have been involuntarily committed are entitled to more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish.'" *Aruanno v. Johnson*, 683 F. App'x. 172, 174–75 (3d Cir. 2017) (citing *Youngberg*, 457 U.S. at 321-22).

Here, the Officer and DOH Defendants acknowledge that Plaintiff's failure to protect claim arises under the Fourteenth Amendment because he is civilly committed, but they argue

that his failure to protect claims are governed by the Eighth Amendment's deliberate indifference standard. It is well established under the Eighth Amendment that "[b]eing violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (quotation marks omitted). Thus, a prison official may be held liable for deliberate indifference while in custody if the official knows that an inmate faces a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it. *See Ortiz v. Jordan*, 562 U.S. 180, 190 (2011) (quoting *Farmer*, 511 U.S. at 847 (1994)); *see also Beers–Capitol v. Whetzel*, 256 F.3d 120, 130-33 (3d Cir. 2001); *Hamilton v. Leavy*, 117 F.3d 742, 746 (3d Cir. 1997).

An Eighth Amendment deliberate indifference claim "has three components: "an inmate must plead facts that show (1) [s]he was incarcerated under conditions posing a substantial risk of serious harm, (2) the official was deliberately indifferent to that substantial risk to h[er] health and safety, and (3) the official's deliberate indifference caused h[er] harm." *Shorter v. United States*, 12 F.4th 366, 374 (2021) (citing *Bistrian v. Levi*, 696 F.3d 352, 367 (3d Cir. 2012).

"Deliberate indifference" in this context is a subjective standard: "the prison official-defendant must actually have known or been aware of the excessive risk to inmate safety." *Beers-Capitol*, 256 F.3d at 125. It is not sufficient that the official should have known of the risk. *Id.* at 133. A plaintiff can, however, prove an official's actual knowledge of a substantial risk to his safety "in the usual ways, including inference from circumstantial evidence." *Bistrian*, 696 F.3d at 367 (quoting *Farmer*, 511 U.S. at 842). Moreover, "a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Id.* "Finally, the official who is actually aware of the risk to the prisoner can avert

liability by showing that he responded reasonably to the risk, even if the ultimate harm was not avoided." *Beers-Capitol*, 256 F.3d at 132; *Bistrian*, 696 F.3d at 368; *Farmer*, 511 U.S. at 845.

The Court assumes that SCO Walker, a corrections officer, would not qualify as a professional decisionmaker and, thus, the deliberate indifference standard applies to his alleged failure to protect Plaintiff. Plaintiff alleges that on May 19, 2021, SCO Walker heard SCO Wiggins tell Plaintiff "I hope it's worth getting your face broke [sic]" in response to Plaintiff's refusal to name or implicate himself or other residents in the possession and distribution of contraband. Plaintiff further alleges that Walker did not report this threat or take steps to stop Wiggins from assaulting Parisi. At this early stage of the proceedings, Plaintiff has sufficiently alleged that SCO Wiggins' threat to assault Plaintiff presented a substantial risk of harm, and SCO Walker directly heard Wiggins threaten Plaintiff with assault but did nothing. The Court denies the motion to dismiss the failure to protect claim against SCO Walker.

The DOH Defendants, Stanzione, Madru, Klos, and Gonzalez, each of whom appear to qualify as professionals under *Youngberg/Shaw*, contend that Plaintiff must show that they were deliberately indifferent to a substantial risk that Plaintiff would be harmed by SCO Wiggins. As noted above, the Third Circuit has not determined whether "the rights of sexually violent predators are coextensive with others who are civilly detained." *See Aruanno*, 683 F. App'x. at 175 n.1 (reversing and remanding for trial court to determine the correct standard). Even if the Court assumes for this motion only that the deliberate indifference standard applies to Plaintiff's failure to protect claims against the DOH Defendants, it disagrees that Plaintiff fails to state a claim for relief. Plaintiff alleges that SCO Wiggins had a history of assaulting residents and that Plaintiff repeatedly told each of the DOH Defendants that 1) SCO Wiggins threatened him with assault and 2) other STU residents also told Plaintiff about SCO Wiggin's planned assault.

Plaintiff also alleges that an STU resident directly told Gonzalez that SCO Wiggins was threatening to assault Plaintiff. Plaintiff also contends that Stanzione, as Clinical Director of the STU, had the authority to move Plaintiff to another Unit in response to the threat but did not do so. These allegations are sufficient to sustain a failure to protect claim at the pleading stage. *See Bistrian I*, 696 F.3d at 369 (holding that prisoner plausibly alleged failure to protect claim where he alleged that he repeatedly advised officials of threats); *Gevas v. McLaughlin*, 798 F.3d 475, 481 (7th Cir. 2015) ("[A] complaint that identifies a specific, credible, and imminent risk of serious harm and identifies the prospective assailant typically will support an inference that the official to whom the complaint was communicated had actual knowledge of the risk."); *Young v. Selk*, 508 F.3d 868, 870–73 (8th Cir. 2007) (discussing potential for substantial risk where inmate told officials of cellmate's threats, requested to be removed from cell immediately, said it was an emergency, and was subsequently attacked).

      The DOH Defendants also argue that, with the exception of Stanzione, Plaintiff does not plead facts showing that they had the authority to transfer him to a different Unit. The Court assumes the truth of Plaintiff's allegation that Stanzione had authority to transfer him in response to the threat but did not. Moreover, because Plaintiff is proceeding pro se, the Court liberally infers from Plaintiff's allegations that DOH Defendants not only failed to move him to another Unit but did nothing to protect Plaintiff from SCO Wiggins, i.e., failed to report the threat to SCO Wiggin's supervisor or other DOC officials.

      For these reasons, the DOH Defendants' motion to dismiss for failure to state a claim for relief is denied.[5]

---

[5] As the Third Circuit has observed, "standards of pleading are not the same as standards of proof[,]" and this Court need not express an opinion on whether [Plaintiff] will ultimately be able to prove his claims." *Durham*, 82 F.4th at 227. Indeed, SCO Walker and/or the DOH

### c. The DOH Defendants' Arguments for Qualified Immunity

The DOH Defendants also argue that they are entitled to qualified immunity because the constitutional right at issue was not clearly established. "At the motion to dismiss stage, federal and state officials are entitled to qualified immunity unless (1) the facts, taken in the light most favorable to the plaintiff, demonstrate a constitutional violation, and (2) the alleged right was clearly established at the time of the violation." *Thomas v. City of Harrisburg*, 88 F.4th 275, 281 (3d Cir. 2023) (internal quotation and citation omitted).

The Court has determined that the facts viewed in the light most favorable to Plaintiff state a claim for failure to protect against the DOH Defendants under the deliberate indifference standard, and, therefore, it addresses only whether the right at issue is clearly established. The doctrine of qualified immunity shields officials from civil liability so long as their conduct "'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

The Supreme Court has "repeatedly told courts not to define clearly established law at too high a level of generality." *City of Tahlequah, Oklahoma v. Bond*, 595 U.S. 9, 12 (2021). Still, "the facts of the existing precedent need not perfectly match the circumstances of the dispute in which the question arises." *Williams v. Sec'y Pennsylvania Dep't of Corr.*, 848 F.3d 549, 570 (3d Cir. 2017). That, is "[a] public official does not get the benefit of 'one liability-free violation' simply because the circumstance of his case is not identical to that of a prior case."

---

Defendants may be able to provide evidence at summary judgment showing that they did not know that Wiggins had a history of assaulting other residents or did not believe that Wiggins would actually assault Plaintiff, or that they responded reasonably to SCO Wiggin's threat of assault even if they failed to avert it.

*Peroza-Benitez*, 994 F.3d 157, 166 (3d Cir. 2021) (quoting *Kopec v. Tate*, 361 F.3d 772, 778 (3d Cir. 2004)). "The law requires only that the right 'is sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Thomas v. City of Harrisburg*, 88 F.4th 275, 284 (3d Cir. 2023) (quoting *Mack v. Yost*, 63 F.4th 211, 233 (3d Cir. 2023)); *see also Mullenix v Luna*, 577 U.S. 7, 11 (2015). "That standard is met when a violation is 'so obvious' it becomes likewise evident that a clearly established right is in play, 'even in the absence of closely analogous precedent.'" *Id.* (quoting *Mack*, 63 F. 4th at 231.)

  Here, the Court credits Plaintiff's allegations that he repeatedly reported SCO Wiggins threats to assault him to each of the DOH Defendants and also told the DOH Defendant that other residents had also made him aware of these threats, but the DOH Defendants failed to move Plaintiff to another Unit or otherwise protect Plaintiff. The Court also credits Plaintiff's allegation that Wiggins had a history of assaulting residents and that STU resident Witted also directly warned Gonzalez that Wiggins was threatening to attack Plaintiff. The Court also credits Plaintiff's allegations that Stanzione, as Clinical Director of the STU, had the authority to move Plaintiff to a different Unit. At issue is whether it was clearly established by May 2021 that an SVP has the right to be protected from assault by a corrections officer after he repeatedly reported the corrections officer's threats of assault to DOH staff.

  Relying on several state regulations, DOH Defendants claim that the DOH is only responsible for mental health treatment of STU residents, and the DOC is responsible for the custody, security, and medical needs of STU residents, and, thus, reasonable DOH employees would not have realized that they must take some action to protect Plaintiff after he repeatedly reported that SCO Wiggins threatened to assault him. (*See* ECF No. 26-1 DOH Defendants' Moving Brief at 28-29 (citing N.J.A.C. 8:131-1.2(a)(1).) Plaintiff, however, alleges in his

Complaint that both the DOC and DOH are both responsible for inmate safety. (*See* Complaint at 6.)

The DOH Defendants also reason that *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004), which addressed at summary judgment whether non-medical prison officials could be liable for deliberate indifference to a prisoner's medical needs, supports their qualified immunity argument. There, the Third Circuit held that "if a prisoner is under the care of medical experts . . . , a non-medical prison official will generally be justified in believing that the prisoner is in capable hands. *This follows naturally from the division of labor within a prison*." *Id.* at 236 (emphasis supplied by DOH Defendants). *Spruill* is a summary judgment decision, and there is an important caveat: a non-medical prison official cannot be charged with the scienter requirement of deliberate indifference "absent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner[.]" *Id.* at 236. Thus *Spruill* does not stand for the proposition that a defendant with actual knowledge of a threat to a prisoner's health or safety is free to ignore that threat merely due to the division of responsibilities within the prison or facility.

At least one court in this District has rejected the DOH's Defendants' qualified immunity argument based on the division of responsibilities within the STU. In *Grushack v. New Jersey Department of Corrections*, 2021 WL 4473163, at *1 (D.N.J. Sept. 30, 2021), the plaintiff alleged that he was subjected to abuse by other STU residents and that Defendants failed to adequately respond to Plaintiff's reports of abuse. In moving to dismiss the complaint, the DHS and DOH Defendants argued that it was not clearly established that they were liable for failing to protect STU residents from other residents. *Id.* at *7. As explained in that decision:

> The DHS and DOH Defendants maintain that there is no settled law demonstrating that "health-related public officials" can be

> liable for "failing to protect individuals in an institution from other residents." DHS Defs. Br. at 38. As discussed, there is clear Supreme Court precedent establishing a claim under the Eighth Amendment for a prison official's failure to protect an inmate from inmate-on-inmate violence. *See Bistrian v. Levi*, 912 F.3d 79, 91 (3d Cir. 2018) (discussing Supreme Court decisions involving deliberate indifference under the Eighth Amendment, including *Farmer v. Brennan*, 511 U.S. 825 (1994)); *see also Shorter v. United States,* [12 F.4th 366, 372 (3d Cir. 2021)] (explaining that in *Farmer*, the Supreme Court concluded that prison officials may be liable for "displaying deliberate indifference to a substantial risk that a prisoner will be attacked by other prisoners" (citing *Farmer*, 511 U.S. at 834)). The DHS and DOH Defendants' argument centers on the fact that because they are not DOC employees, they do not control patient safety. Again, their argument relies on a New Jersey statute. But as discussed, the DHS and DOH Defendants do not point to any legal authority establishing that because of this division, they are not prison officials while doing their jobs at the STU. Consequently, the Court concludes that as prison officials, the clearly established legal authority demonstrates that Stanzione and Adams could be liable for "displaying deliberate indifference to a substantial risk that a prisoner will be attacked by other prisoners." *Shorter*,[12 F.4th 366, 372]. As a result, the DHS and DOH Defendants are not entitled to qualified immunity, and their motion is denied on these grounds.

*Id.* The Court agrees with the district court in *Grushack* that the DOH Defendants cannot rely solely on the division of responsibilities within the STU to avoid liability for failing to protect Plaintiff from violence. This is especially so here, where Plaintiff alleges that the DOC and DOH are jointly responsible for his safety and that he repeatedly told each DOH Defendant that SCO Wiggins was threatening to assault him, and they failed to act.[6]

Moreover, as alluded to above, the DOH Defendants fail to address whether the professional judgment standard and/or the decisions involving involuntarily committed

---

[6] At minimum, this argument would need to be made at summary judgment, where the Defendants could submit evidence proving the sharp division of responsibilities within the STU. The Court is skeptical, however, that even a clear division of responsibilities would ever permit DOH staff to ignore imminent threats to a resident's safety.

individuals controls this Court's qualified immunity analysis and ignore decisions involving the failure to protect involuntarily committed individuals. Although the DOH Defendants argue that there are no decisions in the Third Circuit holding mental health professionals liable for failing to protect <u>prisoners</u> from violence, this argument elides the fact that STU residents are not prisoners but, rather, civil detainees. As discussed above, there is a plethora of clearly established law regarding professional defendants' duty to protect involuntarily committed individuals from violence, including the Supreme Court's decision in *Youngberg* and the Third Circuit's decision in *Shaw*. In moving for qualified immunity, the DOH Defendants have not sufficiently analyzed or distinguished the line of cases where professional decisionmakers have been held liable for failing to protect involuntarily committed individuals from violence or abuse.

For these reasons, the Court denies without prejudice the DOH Defendants' requests for qualified immunity.

### d.  Violations of the New Jersey Administrative Code

As argued by the Officer Defendants, Plaintiff may be seeking relief for violations of N.J.A.C. 10:36A–2.1, which provides as follows:

> Subject to the Sexually Violent Predator Act (SVPA), and any other provisions of law and the Constitution of New Jersey and the United States, a resident shall not be deprived of a civil right solely by reason of receiving treatment under the provisions of the SVPA. Treatment shall not modify or vary legal or civil rights including but not limited to, the right to register for and to vote in elections, or rights relating to the granting, forfeiture, or denial of a license, permit, privilege, or benefit pursuant to any law, except those rights related to providing a safe, secure facility or any appropriate concern.

N.J.A.C. 10:36A–2.1(a). The Officer Defendants contend that no private right of action exists under this statute. The Court agrees. In considering this issue, courts in this District have uniformly held that no private right of action exists under this provision. *See Oliver v. Roquet*,

No. 2:13–1881, 2014 WL 4271628, at *3–4 (D.N.J. Aug. 28, 2014) (analyzing New Jersey courts approach to determining whether a private right of action exists and finding that no such right exists under N.J.A.C. 10:36A-2.1); *Grohs v. Fratalone*, No. 13–7870, 2015 WL 6122147, at *8 (D.N.J. Oct. 16, 2015) (same); *Rodrigues v. Special Treatment Unit*, No. 19-14708, 2019 WL 11770878, at *7 (D.N.J. Sept. 13, 2019) (same). This Court likewise finds that no private right of action exists under N.J.A.C. 10:36A-2.1(a), and the Court dismisses this claim with prejudice.

### e. The Claims for Injunctive Relief

Plaintiff also asks for a plethora of injunctive relief. To satisfy the standing and "case or controversy" requirements of Article III, a party seeking prospective relief "must allege facts from which it appears there is a substantial likelihood that he will suffer injury in the future." *Durham*, 82 F.4th at 226. The Officer and DOH Defendants argue that Plaintiff has not pleaded sufficient facts showing that he will suffer any injuries in the future. The Court agrees, and will grant the motions to dismiss the claims for injunctive relief. If Plaintiff believes he can show a substantial likelihood that he will suffer injury in the future, he may file a motion to amend or supplement his Complaint pursuant to Fed. R. Civ. P. 15 to add facts in support of his claims for injunctive relief.

### IV. CONCLUSION

For the reasons explained in this Opinion, the motions to dismiss are granted in part and denied in part. The official capacity claims for damages brought pursuant to 42 U.S.C. § 1983 are dismissed with prejudice as to all Defendants. The official capacity claims for damages brought pursuant to the NJTCA are dismissed with prejudice as to all Defendants on the basis of Eleventh Amendment immunity. Because no private right of action exists under N.J.A.C.

10:36A-2.1(a), the Court dismisses this claim with prejudice.  The claims for injunctive relief are dismissed without prejudice because Plaintiff has not pleaded sufficient facts showing that he will suffer any injury in the future.  The motions to dismiss are otherwise denied without prejudice.  An appropriate Order follows.


Dated:  May 31, 2024                             *s/ Madeline Cox Arleo*
                                                      **Hon. Madeline Cox Arleo**
                                                      **UNITED STATES DISTRICT JUDGE**