# DuaneMorris®

NEW YORK
LONDON
SINGAPORE
PHILADELPHIA
CHICAGO
WASHINGTON, DC
SAN FRANCISCO
SILICON VALLEY
SAN DIEGO
LOS ANGELES
BOSTON
HOUSTON
DALLAS
FORT WORTH
AUSTIN

*FIRM and AFFILIATE OFFICES*

JOHN B. MCCUSKER
PARTNER
DIRECT DIAL: +1 973 424 2080
PERSONAL FAX: +1 973 556 1449
*E-MAIL:* JBMcCusker@duanemorris.com

*www.duanemorris.com*

HANOI
HO CHI MINH CITY
SHANGHAI
ATLANTA
BALTIMORE
WILMINGTON
MIAMI
BOCA RATON
PITTSBURGH
NORTH JERSEY
LAS VEGAS
SOUTH JERSEY
SYDNEY
MYANMAR

ALLIANCES IN MEXICO

August 19, 2025

**VIA ECF**

The Honorable Cathy L. Waldor, U.S.M.J.
United State District Court for the District of New Jersey
Martin Luther King Building & U.S. Courthouse
50 Walnut Street
Newark, New Jersey 07101

    **Re:**    **Parisi v. Wiggins, et al., No. 2:23-cv-00372 (MCA) (CLW)**
             **Opposition to NJDOC's Motion for Reconsideration**

           **Motion Date: September 2, 2025**

Dear Judge Waldor:

As Your Honor is aware, this firm is counsel to Plaintiff Pietro Parisi ("Mr. Parisi") in the above-referenced action. We respectfully submit this letter in response to non-party New Jersey Department of Corrections's ("DOC") Motion for Reconsideration (the "Motion") (ECF No. 83) Following the Court's Order Granting In Part and Denying In Part DOC's Motion for Protective Order and Motion to Seal (the "Order") (ECF No. 82). Because the Court has considered and rejected each of

DuaneMorris

The Honorable Cathy L. Waldor, U.S.M.J.
August 19, 2025
Page 2

the DOC's arguments below, the DOC has failed to meet the high burden for reconsideration, and Plaintiff respectfully requests that Your Honor deny the Motion accordingly.

## STANDARD OF REVIEW

Reconsideration is "an extraordinary remedy, that is granted 'very sparingly.'" *Brackett v. Ashcroft*, No. 03-3988, 2003 WL 22303078, at *2 (D.N.J. Oct. 7, 2003) (quoting *Interfaith Community Org v. Honeywell Int'l, Inc.*, 215 F. Supp. 2d. 482, 507 (D.N.J. 2002)). A motion for reconsideration may be granted only upon the happening of one of three following circumstances: (1) there was an intervening change in the controlling law; (2) evidence not previously available has become available; or (3) a motion is necessary to correct a clear error of law or prevent manifest injustice. *Id.* (citing *Database Am., Inc. v. Bellsouth Adver. & Pub. Corp.*, 825 F. Supp. 1216, 1220 (D.N.J. 1993); *N. River Ins. Co. v. CIGNA Reinsurance Co.*, 52 F.3d 1194, 1218 (3d Cir. 1995)).

The moving party "cannot use a motion for reconsideration to rehash issues and arguments that have been ruled upon." *Kahan v. Slippery Rock Univ. of Pa.*, No. 12-407, 2014 WL 7015735, at *32 (W.D. Pa. Dec. 11, 2014) (citing *Keyes v. National R. Passenger Corp.*, 766 F. Supp. 277, 280 (E.D. Pa. Apr. 4, 1991)).

DuaneMorris

The Honorable Cathy L. Waldor, U.S.M.J.
August 19, 2025
Page 3

Indeed, "a motion for reconsideration may address only those matters of fact or issues of law which were presented to, but not considered by, the court in the course of making the decision at issue." *Shanahan v. Diocese of Camden*, No. 12-2898, 2014 WL 1217859, at *6 (D.N.J. Mar. 21, 2014) (quoting *A & L Indus., Inc. v. P. Cipollini, Inc.*, No. 12-7598, 2013 WL 6145766, *1 (D.N.J. Nov. 21, 2013)). As such, the heavy burden on a motion for reconsideration "cannot be met through 'recapitulation of the cases and arguments considered by the court before rendering its original decision." *Harrington v. Bergen County*, No. 14-5764, 2017 WL 2960523, at *1 (D.N.J. July 10, 2017) (citations omitted). It is not an opportunity to ask the Court to rethink what it has already thought through. *Id.* (quoting *Dymnioski v. Crown Equip. Corp.*, No. 11–3696, 2012 WL 3095333, at *1 (D.N.J. July 30, 2012)).

## **LEGAL ARGUMENT**

The DOC has raised three arguments in support of its Motion, all of which were fully briefed and thoughtfully argued by counsel, and thoroughly considered by Your Honor in denying, in part, the DOC's underlying Motion for Protective Order and Motion to Seal. Raising the same arguments in a motion for reconsideration that this Court already considered and rejected at the underlying

DuaneMorris

The Honorable Cathy L. Waldor, U.S.M.J.
August 19, 2025
Page 4

motion phase is completely improper, and falls far short of the high burden placed on the DOC for demonstrating a basis for the requested relief. *See Harrington*, 2017 WL 2960523, at *1; *Shanahan*, 2014 WL 1217859, at *6; *Kahan*, 2014 WL 7015735, at *32. Further, even if the DOC's arguments were properly raised, they are so wholly without merit that they should be rejected by the Court regardless.

**I.     Each of the DOC's Concerns Were Raised in Its Underlying Motion and Rejected by this Court.**

Each of the DOC's three substantive arguments were already considered and rejected by the Court. The DOC argued in its initial Motion for Protective Order and Motion to Seal: (1) Plaintiff could intentionally or accidentally disseminate the confidential materials, at pages 16-17 of its brief; (2) Plaintiff's possession of the materials would create a "chilling effect" on the cooperation of other residents in investigatory proceedings, at pages 14-15 and 18-19 of its brief; and (3) Plaintiff could review the surveillance footage for blind spots and defective cameras, and could potentially share with other residents or the public, at pages 18-19 and 22-23 of its brief. (*See* ECF No. 71-1). Each of these arguments were similarly raised at the motion hearing, (*see* ECF No. 85 at 11:24-14:3; 14:12-15:23; 17:16-22:9), and flatly rejected by the Court.

DuaneMorris

The Honorable Cathy L. Waldor, U.S.M.J.
August 19, 2025
Page 5

Not only did the Court already consider and reject the DOC's substantive arguments, but the DOC's requested relief—that Plaintiff only view the materials at issue under the supervision of his counsel—was also raised in the motion papers, (*see* ECF No. 77 at p. 20; ECF No. 80 at pp. 1-2), and at oral argument, (*see* ECF No. 85 at 4:24-5:8; 11:24-12:9), and rejected (*see* ECF No. 85 at 4-15). Accordingly, nothing in the DOC's Motion—neither the requested relief nor the purported bases for that relief—reflect a change in law or fact warranting reconsideration of this Court. For that reason alone, the DOC's Motion should be denied. *See Shanahan*, 2014 WL 1217859, at *6 (quoting *A & L Indus., Inc.*, 2013 WL 6145766, *1); *Harrington*, 2017 WL 2960523, at *1.

**II.     Even If The DOC's Motion Was Procedurally Proper, Its Arguments Are Entirely Without Merit.**

A.     <u>Intentional or Accidental Dissemination of Materials.</u>

The DOC argues that allowing Mr. Parisi to retain copies of the SID materials may result in either his intentional dissemination, or unintentional distribution of those materials if residents enter his unit and retrieve them. Both purported security concerns are entirely speculative, "unsubstantiated by specific examples," and simply do not support the "good cause" showing required to justify restrictions on Mr. Parisi's presumptive access to the documents. *See In re Avandia Mktg., Sales*

DuaneMorris

The Honorable Cathy L. Waldor, U.S.M.J.
August 19, 2025
Page 6

*Practices & Prods. Liab. Litig.*, 924 F.3d 662, 671 (3d Cir. 2019) (citing *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 786 (3d Cir. 1994)).

Indeed, at no point in the prior motion practice or at oral argument, did the DOC give any example of Mr. Parisi's malintent in seeking to review and retain the materials relevant to his case. They have not pointed to anything in Mr. Parisi's history (because there is nothing), or to any other fact, to support the contention that Mr. Parisi will intentionally disseminate any part of the SID record to other residents. Actually, in its moving papers on the underlying motion, the DOC conceded that the second factor—whether the information is being sought for a legitimate purpose or for an improper purpose—weighed in Mr. Parisi's favor. (*See* ECF No. 71-1 at 15-17). This is because there is undisputedly *no* evidence of Mr. Parisi's intention to disseminate any of the materials, or otherwise of an improper motive in seeking same.

Further, as the Court correctly pointed out at the Motion Hearing, any semblance of a concern raised by the DOC regarding Mr. Parisi's retention of the materials is mitigated by his being subject to the confidentiality order in this case. As the Court rightly noted, "he's agreed—and he'll do that under oath—to abide by the confidentiality order. And if, in fact, he violates that and we find out, there are

DuaneMorris

The Honorable Cathy L. Waldor, U.S.M.J.
August 19, 2025
Page 7

remedies." (ECF No. 85 at 14:19-22). The DOC has failed to explain how its arguments on Mr. Parisi's retention of the materials persist with that protection in place.

The DOC's argument that other residents may break into Mr. Parisi's cell and take the materials without Mr. Parisi's consent, while concerning for other reasons, is also insufficient to overcome Mr. Parisi's presumptive, and court-enforced, right to unrestricted access to these materials. At oral argument, the DOC represented to the Court that there was a "grave possibility" other residents would break into Mr. Parisi's cell to retrieve the SID materials, but also admitted, in the next breath, that there were no documented incidents of such violations ever occurring. (ECF No. 85 at 15:1-3). To the extent that representation is correct, and there have been no previous incidents of residents breaking into cells and stealing court materials, it was impermissibly speculative for the DOC to raise that concern in the first instance, and borderline irresponsible to raise it again in this instant motion. To the extent these incidents *have* occurred, they speak much more to the culpability of the DOC than of Mr. Parisi, and any risk to Mr. Parisi or his personal possessions should be addressed and remediated immediately. Of course, any inability of the DOC to keep

DuaneMorris

The Honorable Cathy L. Waldor, U.S.M.J.
August 19, 2025
Page 8

Mr. Parisi and his things safe and secure while he is under its supervision is not a basis for infringing upon Mr. Parisi's right to possession of these materials.

Because the DOC, has failed to point to a clear and justifiable safety concern relating to Mr. Parisi's possession of the SID materials, the DOC's requested limitations on Mr. Parisi's right to access same should be denied.

  B. <u>"Chilling Effect" on SID Witnesses.</u>

The DOC also attempts to justify its request for relief by arguing Mr. Parisi's retention of these materials will create a chilling effect on other residents who learn their witness interviews were not, in fact, confidential, as the SID investigators incorrectly assured they would be. As argued thoroughly below, witnesses to a SID investigation do not become "confidential" simply because the investigators, representing a government entity, tell the witnesses their interviews about a brutal assault performed by another representative of the same government actor, will be unavailable or in any way restricted from the view of the individual suing for that same assault. That the DOC incorrectly made that assurance to its interviewees is not a basis for restricting Mr. Parisi's access to the SID materials.

This is especially true when the DOC has failed to treat these witnesses as "confidential" in any other respect. For the DOC to post the names of the witnesses

DuaneMorris

The Honorable Cathy L. Waldor, U.S.M.J.
August 19, 2025
Page 9

in a list of exhibits on the public docket and to make those names available to the other parties—the assailants—in this case, but then seek to withhold the same in any capacity from Mr. Parisi totally undermines the DOC's position. This inconsistency was also addressed at the Hearing:

> [DOC]: Your Honor, the DOC and SID believe he should not be able to see these witness interviews because it will create a chilling effect. They—before these—
> THE COURT: What's the chilling effect?
>
> [DOC]: The chilling effect is you have essentially confidential informants. So if you're essentially giving their names and—to the plaintiff here, again, it could create conflict.
>
> THE COURT: So they're confidential informants for the DOC?
>
> [DOC]: For SID.
>
> . . . .
>
> THE COURT: So Mr. Parisi doesn't know their names?
>
> . . . .
>
> [DOC]: I am not sure. I am not—I can't speak to that. I don't know exactly. I don't know if he knows names. I am not sure, Your Honor.
>
> . . . .
>
> THE COURT: But you know what you turned over. So did you turn over the names of confidential informants?

DuaneMorris

The Honorable Cathy L. Waldor, U.S.M.J.
August 19, 2025
Page 10

> [DOC]: Just recently, but I am not sure if [he] has—Mr. Parisi has viewed that now with the supervision of his counsel. We just did that last week, Your Honor.
>
> [PARISI'S COUNSEL]: I'll just represent they're in Exhibit E to their motion.
>
> THE COURT: Thank you. So all of these alleged confidential informants are known to Mr. Parisi. Is that a statement that's true? Not true? Or I don't know? Well, give me an answer.
>
> [PARISI'S COUNSEL]: That's true, Your Honor.
>
> THE COURT: Okay. Thank you.
>
> [(ECF No. 85 at 18:5-19:24).]

The DOC has also failed to explain, in its current motion, how Mr. Parisi reviewing the witness interviews with his counsel, but not being able to retain those materials, alleviates any alleged "chilling effect" that may occur. The DOC simply states that, "once other residents learn that the information and statements they offered in their interviews are no longer confidential in nature and their identities revealed, it may deter future residents from coming forward in the future to report criminal activity." (ECF No. 83-1 at pp. 4-5). The identities of the witnesses (assuming they were actually confidential to begin with), would be revealed to Mr. Parisi regardless of whether he viewed the interviews with counsel, as requested by the DOC, or independently. The alleged "chilling effect" would be the same, and as

DuaneMorris

The Honorable Cathy L. Waldor, U.S.M.J.
August 19, 2025
Page 11

already determined, is a grossly insufficient basis to justify any limitation on Mr. Parisi's ability to examine materials relevant to his case.

    C.    <u>Surveillance-Related Security Risks.</u>

Lastly, the DOC re-argues that if the security videos are readily available to Mr. Parisi, he can review the videos in a way that uncovers blind spots and defective cameras, and possibly share that information with other residents. The DOC makes this argument again at the reconsideration stage, despite conceding explicitly at the Hearing that the residents already *know where the cameras are located*. (*See* ECF No. 85 at 12:21-22). Indeed, these are not high-tech, hidden cameras. They are plainly visible to the naked eye. Their location is no secret to Mr. Parisi or the other residents.

The DOC raises the concern that Mr. Parisi's unfettered access to the footage would allow him to slow down or playback video, and identify the weaknesses in the DOC camera placement. This is non-sensical. These are stationary cameras. There is nothing about the angle or location of the camera that slowing down and playing back footage would uncover that would not be available to Mr. Parisi by a glance at one frame at any given time stamp in the footage.

DuaneMorris

The Honorable Cathy L. Waldor, U.S.M.J.
August 19, 2025
Page 12

What Mr. Parisi's access to the footage will most likely uncover—which is the DOC's true concern—are additional witnesses, theories, and context to the actions of the officer-assailants, which will assist Mr. Parisi with the prosecution of his case, and necessarily paint the DOC and its officers in a negative light. That, quite obviously, is not a basis for limiting Mr. Parisi's access to the footage.

### III. The DOC's Proposal Is a Drastic and Unnecessary Limitation on Plaintiff's Presumptive Right to These Materials.

Counsel for Mr. Parisi meticulously (and convincingly) explained at oral argument why limitations on Mr. Parisi's ability to retain copies of the materials he is entitled to examine for the prosecution of his case is problematic. The DOC's continued suggestion that Mr. Parisi view the materials under the supervision of counsel is much more restrictive and inhibitive of his rights than the DOC acknowledges.

There is a great deal of complexity involved in our attorney visits with Mr. Parisi. These visits have to be preplanned, much like visits to a prison, which involve a great deal of coordination, not only with Mr. Parisi, but the facility itself. Though doing so has not been necessary yet, there will be additional administrative steps involved in bringing a laptop into any meeting with Mr. Parisi. Once in the facility,

DuaneMorris

The Honorable Cathy L. Waldor, U.S.M.J.
August 19, 2025
Page 13

we are awarded only thirty- or sixty-minute blocks of time, in very limiting, tight conditions.

Each of the SID surveillance videos is around twenty minutes in duration. Some of the witness interviews exceed an hour in length. It would take a minimum of five, full, uninterrupted visits just to play Mr. Parisi the videos from start to finish, and that is without stopping the video for commentary, or slowing down or playing back important portions of the footage for further analysis. We would undoubtedly need additional visits to actually digest and discuss the footage with Mr. Parisi, or to perform a more thorough review (i.e. playing concurrent portions of different surveillance angles one after the other).

The DOC's "proposal" does not give the proportional weight to Mr. Parisi's "review [of] sensitive and crucial documents relevant to his pending suit" in the balance against the DOC's unsubstantiated, and already rejected, "institutional security" concerns. The proposed limitation of Mr. Parisi's review of the materials only in the presence of counsel would limit his ability to access the best, most material evidence to his case to very short increments of time, in very restrictive conditions, and in a piecemeal fashion, with visits likely being days a part, at best. These restrictions were rightly rejected by the Court in the underlying Motion, and

DuaneMorris

The Honorable Cathy L. Waldor, U.S.M.J.
August 19, 2025
Page 14

the DOC has presented nothing new or compelling to justify their imposition now. And again, any concerns the DOC has regarding security are addressed and alleviated by the confidentiality order governing this case.

## CONCLUSION

Accordingly, we respectfully request that this Court deny the DOC's Motion. The Motion does not present any matters of fact or issues of law not already considered and rejected by the Court, making the requested relief entirely improper. Further, even if the Court were to find the Motion procedurally sound, the DOC failed to include any legitimate basis imposing the requested restrictions on Mr. Parisi.

Respectfully submitted,

DUANE MORRIS LLP

*/s/John B. McCusker*
John B. McCusker

JP:cb

cc: All Counsel of Record (via ECF)